IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELVIN SPEIGHT    : CIVIL ACTION
   *Petitioner*    :
         : NO. 04-4110
   **v.**      :
         :
**JEFFREY BEARD,** *et al*.   :
   *Respondents*   :

NITZA I. QUIÑONES ALEJANDRO, J.         MARCH 7, 2017

# MEMORANDUM OPINION

## INTRODUCTION

  Petitioner Melvin Speight ("Petitioner"), a Pennsylvania state prisoner, filed a counseled petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254, later amended, in which he asserts seventeen claims for relief. [ECF 8 and 31].[1] The matter was initially filed as a death penalty case. However, once the death penalty aspect of the petition was no longer contested, in accordance with 28 U.S.C. §636(b) and Local Civil Rule 72.1.IV(c), the amended petition was referred to United States Magistrate Judge Linda K. Caracappa for a Report and Recommendation ("R&R"). [ECF 110].[2] Magistrate Judge Caracappa issued an R&R, which recommended that the amended petition for a writ of *habeas corpus* be denied as to the guilt phase of Petitioner's claim and, by agreement of the parties, be granted with respect to Petitioner's death sentence. [ECF 115]. Petitioner filed extensive objections to the R&R, [ECF 120], to which Respondents have responded. [ECF 126]. The issues have been fully briefed and are ripe for disposition.

---

[1] This *habeas* matter was originally assigned to the Honorable Anita B. Brody and reassigned to the undersigned on September 3, 2013.

[2] This matter was assigned to Magistrate Judge Caracappa *only* after Respondents advised this Court that they no longer opposed a grant of relief as to the death penalty.

Upon a thorough and independent review of the state record, the relevant court filings, and a *de novo* review of Petitioner's objections, for the reasons set forth below, this Court overrules Petitioner's objections, approves and adopts the R&R, and denies the petition for a writ of *habeas corpus* as to the guilt phase of Petitioner's trial. With respect to Petitioner's sentence of death, upon agreement of the parties (as described herein), Petitioner's death sentence is vacated, and Petitioner is to be re-sentenced to a term of life imprisonment. Petitioner's corresponding motion for discovery and motion for oral argument are denied.

## BACKGROUND

The relevant evidence underlying Petitioner's conviction on numerous offenses was summarized by the Pennsylvania Supreme Court as follows:

> Testimony at trial established that at approximately 9:00 p.m. on August 31, 1992, Gary Carson, Allen Carson, William Wilson, Neal Carter and David Scott (referred to collectively as "Carson's group") were drinking beer at the corner of Wyalusing and Conestoga Streets in Philadelphia when they observed a man in an orange jumpsuit, known as "Inky Man," approach the corner along Conestoga Street and wave as if signaling to persons further up the street. Indeed, in response to Inky Man's signal, appellant and three other men, Shannon Faison, Lamar Douglas and Cornell Bennet, also known as "Junior" (referred to collectively as "appellant's group"), suddenly appeared at the corner and approached the group. Gary Carson testified that in the weeks preceding the encounter, one of the members of the appellant's group, Bennet, had repeatedly warned him to stay away from that particular corner because his presence was interfering with the drug operation Bennet ran at that location.
>
> Upon appellant's group's arrival at the corner, Faison said to Carson's group, "What's up with my man's corner?" However, before anyone could respond, appellant and his cohorts produced firearms and started firing at Carson's group. At the time of the shooting, appellant's group was standing on the sidewalk between Carson's group and the curb.
>
> William Wilson was shot ten times, including a fatal shot to the left chest which pierced his heart and punctured his right lung.

Four of the shots hit Wilson from behind. Wilson was pronounced dead at the scene. Neal Carter was shot three times from behind, including a fatal shot which pierced his heart. He was pronounced dead upon arrival at the hospital. Allen Carson was shot once in the back, severing his spine and permanently paralyzing him. Gary Carson was shot eight times, but survived. Only David Scott was not hit. A ballistics expert testified that at least three and possibly four different firearms were used in the attack.

Gary Carson and Allen Carson both testified that appellant was standing between Faison and Bennet, but they did not know if he had a gun. David Scott testified that the person standing between Faison and Bennet had fired a gun, although he could not identify who that person was.

The day following the shooting, Gary Carson identified Bennet from a photographic array. A week later, he also identified Faison and Douglas from photographic arrays. Finally, on September 18, 1992, Gary Carson identified appellant as the fourth assailant from a photographic array. An arrest warrant was obtained on that date and officers went to appellant's house to arrest him. However, appellant's mother told the officers that appellant was working in Baltimore and she did not know how to reach him. As a result, appellant was listed as a fugitive in the National Crime Information Computer network. Appellant was arrested on a fugitive warrant in Mansfield, Massachusetts on September 25, 1992. At the time of the murders, appellant had a full head of hair, but when he was arrested his head was completely shaved.

*Commonwealth v. Speight*, 677 A.2d 317, 320-21 (Pa. 1996).

On June 24, 1993, a jury in the Court of Common Pleas of Philadelphia County, convicted Petitioner of two counts of first-degree murder, two counts of aggravated assault, one count of criminal conspiracy to commit murder, and one count of possession of an instrument of crime. Following the penalty phase of the trial, the jury imposed a sentence of death on each murder conviction. At the conclusion of trial, trial counsel was granted permission to withdraw and new counsel was appointed. Petitioner's new counsel filed post-verdict motions attacking the judgment and, following an evidentiary hearing, the trial court denied Petitioner's motions and formally imposed the jury's sentence. On May 20, 1996, the Pennsylvania Supreme Court

affirmed Petitioner's conviction and judgment of sentence on direct appeal.  *Speight*, 677 A.2d at 328.  The United States Supreme Court denied a petition for writ of certiorari on February 18, 1997.  *Speight v. Pennsylvania*, 519 U.S. 1119 (1997).

In the interim, on January 15, 1997, Petitioner filed a timely *pro se* petition for collateral review under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §9541 *et seq.* ("First PCRA Petition").  PCRA counsel was appointed, who filed an amended petition, a supporting memorandum of law, and a supplemental memorandum of law.  After Petitioner expressed dissatisfaction with his first court-appointed attorney, new counsel was appointed. Petitioner's second appointed PCRA counsel filed amended and supplemental pleadings on Petitioner's behalf.  On December 12, 2000, the PCRA court denied relief as to Petitioner's convictions but granted a new penalty hearing.  The Commonwealth moved for reconsideration and, in an opinion dated April 3, 2001, the PCRA court reversed itself and held that Petitioner was not entitled to a new penalty hearing.  Petitioner appealed, and on July 22, 2004, the Pennsylvania Supreme Court affirmed the denial of Petitioner's First PCRA Petition. *Commonwealth v. Speight*, 854 A.2d 450, 454 (Pa. 2004).

On August 30, 2004, Petitioner filed motions in this Court for the appointment of counsel and a stay of execution, both of which were granted.  [ECF 1, 3].  On July 1, 2005, Petitioner filed a timely, counseled petition for a writ of *habeas corpus*.  [ECF 8].  On January 13, 2006, Petitioner filed a motion to stay the instant federal proceedings pending the exhaustion of his state court remedies, [ECF 16]; the motion was granted on February 9, 2006.  [ECF 18].

On January 12, 2006, Petitioner filed a second petition for post-conviction relief ("Second PCRA Petition") alleging a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Following an evidentiary hearing, the PCRA court denied the Second PCRA Petition on April

26, 2007.  Petitioner appealed, and on December 28, 2009, the Pennsylvania Supreme Court affirmed the denial of relief, finding that Petitioner's Second PCRA Petition was untimely.  *See Commonwealth v. Speight*, 986 A.2d 759 (Pa. 2009).

Following the reactivation of the federal *habeas* proceedings, Petitioner filed an amended petition for writ of *habeas corpus*, [ECF 31], and a memorandum of law in support.  [ECF 70]. On November 2, 2011, Petitioner filed a motion for discovery, [ECF 38], which was denied, without prejudice, on December 22, 2011.  [ECF 49].  Petitioner has since filed a second motion for discovery, [ECF 99], and a motion for oral argument on the discovery motion, [ECF 111], which are disposed of herein.

As stated, Petitioner asserts seventeen claims in his *habeas* petition.[3]  On December 22, 2014, Respondents filed their response in opposition, [ECF 94], and advised this Court that they would:

> not [] contest a conditional grant of relief as to [Petitioner's] death sentence as part of the Court's final order disposing of [Petitioner's] claims attacking the guilt phase of [Petitioner's] trial, on the understanding that this will not be understood or argued to constitute a concession that any of [Petitioner's] claims have merit. The respondents also confirmed that although a condition of relief would, in principle, permit the Commonwealth to seek a new capital sentencing proceeding in state court, the Commonwealth will not do so.  Thus, even if this Court denied relief as to [Petitioner's] claims challenging his convictions, i.e., the guilty phase of his trial, his death sentence would be vacated and the Commonwealth will not seek a new capital sentencing proceeding in connection with this case.

[*See* ECF 94 at p. 10 n. 11].  As such, Respondents did not address any of Petitioner's claims that challenged his sentence.

---

[3]      Petitioner withdrew his third claim on July 3, 2013.  [*See* ECF 70 at p. 37].

The Magistrate Judge issued a comprehensive and soundly reasoned 70-page R&R in which she recommended that this Court deny relief to all of Petitioner's claims challenging his conviction for first-degree murder, criminal conspiracy to commit murder, aggravated assault, and related weapons possession offenses, and conditionally grant relief as to his death sentence. [ECF 115].  Petitioner filed objections to the R&R, [ECF 120], to which Respondents have responded.  [ECF 126].  Petitioner also filed a notice of supplemental authority, [ECF 127], to which Respondents have responded.  [ECF 128].

**LEGAL STANDARD**

Where objections to an R&R are filed, the court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. §636(b)(1)(C)), provided the objections are both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).   In making its *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. §636(b)(1).  Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7.  Objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review.  *Becker v. Tennis*, 2011 WL 2550544, at *1 n.3 (E.D. Pa. June 23, 2011) (declining to address contentions included in petitioner's objections, concluding that they are "nothing more than a restatement of the underlying claims contained in his petition") (citing *Morgan v. Astrue*, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)); *see also Nghiem v. Kerestes*, 2009 WL 960046, at *1 n.1 (E.D. Pa. Apr. 3, 2009) (declining to engage in additional review of objections

where the objections merely re-articulated all the claims and theories for relief that were addressed and dismissed by the magistrate judge).

As laid out in the R&R, the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments raised in federal *habeas corpus* petitions filed under 28 U.S.C. §2254. *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000). AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Id*. at 196. In accordance with §2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

To establish that the state court decision was "contrary to" federal law, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court may only find a state court decision to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*. at 890. Further, factual determinations made by the state court are "presumed to be correct." 28 U.S.C. §2254(e)(1). However, a petitioner may rebut this presumption with "clear and convincing evidence" of the state court's error. *Id*. Consequently, a *habeas* petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual

findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).  As the Supreme Court has observed, this standard is "difficult to meet and highly deferential."  *Cullen v. Pinholster*, 563  U.S. 170, 180 (2011).

In order to seek federal *habeas* relief, a petitioner must first exhaust the remedies available in state court.  *See* 28 U.S.C. §2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . .").  To meet this exhaustion requirement, a petitioner must "fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  If a state court has refused or would refuse to review a claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, the court may deny that claim as procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729, 731-32 (1991); *Lark v. Sec't Pa. Dept. of Corrections*, 645 F.3d 596, 611 (3d Cir. 2011); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004).  A federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default."  *Holloway v. Horn*, 355 F.3d 707, 715 n.3 (3d Cir. 2004) (quoting *Coleman*, 501 U.S. at 750).

A claim is procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement."  *Coleman*, 501 U.S. at 730.  Federal review of the claim, however, is available if the procedural rule that the state court applied to bar a federal claim was not "independent" and "adequate."  *Albrecht v. Horn*, 485 F.3d 103, 115 (3d Cir. 2007).  A state procedural rule is not adequate to bar federal review on *habeas* if it was not firmly established and regularly followed by the state courts at the

time it was applied.  *Lark*, 645 F.3d at 611.  Whether a procedural rule "was firmly established and regularly applied is determined as of the date the default occurred, and not as of the date the state court relied on it, because a petitioner is entitled to notice of how to present a claim in state court."  *Albrecht*, 485 F.3d at 115.

**DISCUSSION**

Here, Petitioner offers twelve objections (with various subparts) to the Magistrate Judge's R&R.  Petitioner's objections, however, largely reiterate the arguments he presented to, and that were thoroughly considered and rejected by the Magistrate Judge.  Petitioner, through appointed counsel, submitted over 200 pages of arguments in support of the seventeen claims he asserted in his *habeas* petition, all of which were comprehensively addressed in the Magistrate Judge's 70-page R&R.  Notwithstanding the rehashing of these claims, Petitioner's objections will be addressed.

#### *Objection One – Application of <u>Martinez</u> and <u>Trevino</u> to this Case*

As set forth in the R&R, the Magistrate Judge found that many of Petitioner's claims were procedurally defaulted because they had either never been fairly presented to the state courts or were only raised in a Second PCRA petition which the Pennsylvania Supreme Court found was untimely and, therefore, procedurally barred.  Petitioner acknowledges that many of his current federal *habeas* claims were not fairly presented to the state courts on either direct appeal or post-collateral appeal.  Petitioner argues, however, that these otherwise procedurally defaulted claims are subject to a narrow exception to the procedural default doctrine recognized in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), and that the Magistrate Judge erred in concluding otherwise.  This Court disagrees, and finds that the

Magistrate Judge addressed, at length, the applicability of the *Martinez* and *Trevino* decisions and correctly determined that the narrow exception therein does not apply to Petitioner.

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the United States Supreme Court held that ineffectiveness of state post-conviction counsel cannot satisfy the "cause" requisite for overcoming a procedural default because there is no federal constitutional right to counsel on post-conviction review. *Coleman*, 501 U.S. at 750-54. In *Martinez*, the Supreme Court carved out a "narrow" and "limited" exception to the rule in *Coleman*, and held that where state law requires claims of ineffective assistance of trial counsel to be raised for the first time in a collateral proceeding, a federal *habeas* petitioner may be able to establish "cause" sufficient to overcome a procedural default of a "substantial" claim of trial counsel's ineffectiveness if the collateral appeal counsel was also ineffective. *Martinez*, 132 S. Ct. at 1315-21. The *Martinez* exception, however, only applies when post-conviction collateral relief proceedings were the first opportunity to raise claims of ineffective assistance of trial counsel. *Id*. In *Trevino*, "the Supreme Court clarified that the *Martinez* rule applied not only to states that expressly denied permission to raise ineffective assistance claims on direct appeal . . . but also to states in which it was 'virtually impossible,' as a practical matter, to assert an ineffective assistance claim before collateral review." *See Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (quoting *Trevino*, 133 S. Ct. at 1915).

Here, the record shows, and Petitioner readily admits, that with the benefit of new counsel following his trial, Petitioner asserted various ineffective assistance of trial counsel claims in his direct appeal *and* in his first post-conviction collateral appeal. These claims of ineffective assistance of counsel were considered and rejected by the state courts on their merits. *See Speight*, 854 A.2d at 454. Indeed, the trial court conducted evidentiary hearings on

Petitioner's ineffective assistance of trial counsel claims, and the Pennsylvania Supreme Court ruled on the merits of the claims in its direct appeal decision. *Id.* The state courts also addressed but rejected on the merits the ineffective assistance of trial counsel claims that Petitioner raised during his First PCRA. Notably, even when Petitioner returned to state court to file and litigate his Second PCRA Petition, he still made no attempt to present many of his unexhausted claims. As the Magistrate Judge correctly concluded, in light of the above, Petitioner's allegation that the Pennsylvania system was similar to the Texas system in *Trevino* is without merit, since Petitioner had a meaningful opportunity to raise and litigate his claims of ineffective assistance of counsel on direct appeal. *Cf.*, *R.R. v. Beard*, 2015 WL 5730784, at *20 (W.D. Pa. Sept. 30, 2015) (declining to apply *Martinez* exception where petitioner asserted ineffective assistance claims prior to post-collateral proceedings).

This Court also rejects Petitioner's argument that the *Martinez* exception should be extended to claims of ineffective assistance of direct appeal counsel, as opposed to trial counsel. Such an extension would require overruling the limits the Supreme Court itself imposed on the "narrow" exception recognized in *Martinez*, which extended only to claims for ineffectiveness of trial counsel. Though not yet addressed by the Third Circuit, with the exception of the Ninth Circuit, every federal appellate court that has considered argument for such an extension has rejected the argument. *See e.g.*, *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) (collecting cases); *Gonzalez v. Bush*, 2015 WL 12591014, at *9 (E.D. Pa. Dec. 1, 2015). This Court will follow suit.

### Objection Two – No Showing of Actual Innocence to Overcome Procedural Defaults

Petitioner objects to the Magistrate Judge's conclusion that he failed to make a sufficient showing of actual innocence to overcome his various procedural defaults. In his objections,

Petitioner merely reasserts the same arguments he made to, and which were thoroughly addressed by, the Magistrate Judge.  After a careful *de novo* review, this Court agrees with the Magistrate Judge's conclusions and finds that Petitioner has not met the high burden of showing actual innocence as an exception to overcoming his procedural defaults.

Petitioner contends that he meets the "innocence" exception to overcome any procedural default because he has presented "new" evidence that shows that he did not possess or fire a weapon at the crime scene.  Specifically, this new evidence consists of expert ballistics and crime scene analysis that purportedly showed that no more than three, and possible two, guns were fired at the scene of the crime.

As accurately noted by the Magistrate Judge, a *habeas* petitioner may obtain review of a procedurally defaulted claim by demonstrating that failure to consider the claim will result in a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).  The United States Supreme Court has held that when a petitioner makes an extraordinary showing of "new reliable evidence," consideration of which makes it more likely than not that no rational juror would find him guilty, it would be a fundamental miscarriage of justice not to review his otherwise defaulted claims on the merits.  *Id.* at 324.  Thus, a showing of "actual innocence" may excuse a procedural default under the miscarriage of just exception.  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).  The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare."  *Id.* at 1928; *see also Schlup*, 513 U.S. at 321; *Houck v. Stickman*, 625 F.3d 88, 96 (3d Cir. 2010) (describing exception as "'rare' remedy that is only available in an 'extraordinary' case"); *Johnson v. Pinchak*, 392 F.3d 551, 564 (3d Cir. 2004) (stating that the exception applies only in "rare" or "extraordinary" cases); *Hubbard v. Pinchak*,

378 F.3d 333, 338 (3d Cir. 2004) ("actual innocence" exception applied "only in the rarest of cases").  The Supreme Court has emphasized:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.  It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.  Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup*, 513 U.S. at 329.  A *habeas* petitioner "should be allowed to pass through the gateway and argue the merits of his underlying claims" only if the petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Id*. at 316. "Actual innocence" refers to factual innocence and not mere legal sufficiency.  *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

As the Magistrate Judge concluded, the evidence presented at trial was more than sufficient to show, and for a reasonable juror to conclude, that he possessed the intent to kill the victims as part of a conspiracy with the other assailants.  The evidence presented at trial, and not challenged in any way by Petitioner's alleged "new" evidence, showed Petitioner standing between two of the assailants at the time of the shooting, and the person standing between these two assailants holding a gun.  *Speight*, 677 A.2d at 321; (N.T. 6/24/93 at 67-68).  Other evidence, again not challenged in any way by Petitioner's alleged "new" evidence, showed that one of the assailants in the group was carrying a large semiautomatic assault weapon with a magazine capable of holding at least 20 bullets.  (N.T. 6/23/93, at 63-66).  The victims were shot 22 times

with all, but one, either fatally or gravely wounded.  *Speight*, 677 A.2d at 321.  No member of the assailants' group was injured in any way, and there was no evidence presented that any one of the victims was armed.  *Id*.  Even if Petitioner's "new" evidence showed that he did not possess or shoot a gun, a reasonable juror could still conclude, based on all of the evidence presented, that Petitioner was present at the scene, had the intent to kill members of the victims' group based on Petitioner's actions in concert with the assailants, and knew of the concealed weapons the members of his group possessed.  As such, this Court agrees with the Magistrate Judge's conclusion that Petitioner has not met the burden required to implicate an equitable exception to procedural default based on a claim of actual innocence because he has not shown that it is more likely than not that no reasonable juror would have convicted him in light of his "new" evidence.

### Objection Three – Petitioner's <u>Batson</u> Claim (Claim I)

At Claim I of his *habeas* petition, Petitioner asserts that his constitutional rights were violated by the prosecution's racially discriminatory use of peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and that trial counsel was ineffective for failing to make a *Batson* challenge.  With respect to Petitioner's substantive *Batson* claim, the Magistrate Judge found that the claim had been forfeited because Petitioner did not assert a timely objection at trial or on direct appeal as required to preserve the claim.  *See Clausell v. Sherrer*, 594 F.3d 191, 194-95 (3d Cir. 2010) (holding that "[a]s an initial matter, we can dispose of [petitioner's] substantive *Batson* claim, because in failing to raise an objection at trial to the prosecutor's use of challenges, [petitioner] forfeited his right to raise a *Batson* claim on appeal.").  In his objections, Petitioner does not appear to object to this conclusion; and any such objection would be without merit.

With respect to Petitioner's *Batson*-based ineffective assistance of counsel claim, the Magistrate Judge found this claim to be procedurally defaulted because it has never been presented to the state courts, and Petitioner would be barred from doing so due to the applicable one-year statute of limitations.  In his objection, Petitioner argues this conclusion was erroneous and argues that the claim was "fairly presented" in his second petition for state post-conviction relief.  Petitioner acknowledges that the Pennsylvania Supreme Court found this claim was untimely, but states that the "state court's application of the time bar was not adequate to foreclose federal habeas review of the merits."  (Petitioner's Objections at p. 12).  As support, Petitioner merely cites to the Third Circuit's decision in *Lark v. Sec'y Pa. Dep't of Corrections*, 645 F.3d 596 (3d Cir. 2011), but provides no argument or analysis.

Petitioner's unsubstantiated reliance on *Lark* is, however, misplaced.  In *Lark*, the Third Circuit held that the PCRA's one-year procedural time bar was not firmly established as of January 16, 1996, when the petitioner in that case defaulted the *Batson* claim he sought to subsequently raise in his federal *habeas* petition.  *Id*. at 612-613.  As such, the *Batson* claim in *Lark* could be reviewed by the federal court on *habeas* review.  *Id*.  The petitioner in *Lark*, however, unlike Petitioner here, fully litigated his first and second PCRAs *before* the Pennsylvania Supreme Court made it clear that state procedural rules, including the one-year statute of limitations, would be strictly enforced in capital cases.  *See Lark*, 645 F.3d at 612-13. In contrast, while Petitioner was litigating his First PCRA Petition in state court, the Pennsylvania Supreme Court made it clear that the one-year statute of limitations and other procedural rules would be strictly enforced, even in capital cases, and that there would therefore be one, and only one, round of state post-conviction review except when a petitioner could demonstrate entitlement to one of the limited exceptions to the procedural rules.  *See*

*Commonwealth v. Albrecht*, 720 A.2d 693, 700 (Pa. Nov. 23, 1998) (holding that the so-called "relaxed waiver rule" would "no longer [apply] in PCRA appeals.").  The Pennsylvania Supreme Court confirmed in *Commonwealth v. Peterkin*, 722 A.2d 638 (Pa. Dec. 21, 1998), that the PCRA one-year time bar applied to capital cases and was not superseded by the relaxed waiver rule.  *Id*. at 643.  Further, in *Commonwealth v. Banks*, 726 A.2d 374 (Pa. Mar. 2, 1999), the Pennsylvania Supreme Court confirmed that the PCRA's one-year statute of limitations was to be regarded as jurisdictional in nature, with judges allowed to make exceptions only to the extent specifically permitted under the statute.  *Id*. at 376.

Here, after being appointed new PCRA counsel, Petitioner was permitted to file an amended PCRA petition on June 29, 1999.  By that point in time, the Pennsylvania Supreme Court had made clear that the one-year statute of limitations would be enforced in capital PCRA cases, just as in noncapital cases, and Petitioner was on notice that the Pennsylvania courts would not liberally consider or grant second or successive petitions unless a petitioner could show entitlement to one of the narrow exceptions to Pennsylvania's one-year statute of limitations.  *See, e.g., Peterkin*, 722 A.2d at 643.  As such, when Petitioner's PCRA counsel filed an amended petition on Petitioner's behalf, the one-year time bar for PCRAs was firmly established and regularly followed.  Thus, as stated, Petitioner's reliance on *Lark* is misplaced.

Moreover, Petitioner's apparent attempt to distinguish his case from these other cases on the basis that he actually "presented" his claim of ineffective assistance of trial and direct appeal counsel to the state courts*, albeit* in a second and untimely PCRA, is without merit.  As the U.S. Supreme Court has explained, a claim presented to the state courts, but only in a second and time-barred post-conviction appeal, has not been fairly presented to the state courts.  *See*

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *see also Karnes v. Patrick*, 2009 WL 1026342, at *5 (W.D. Pa. Apr. 15, 2009) (collecting cases). This objection, therefore, is overruled.

### Objection Four – Claim IV – Ineffective Assistance of Counsel for Failing to Investigate, Develop and Present Evidence in Support of "Mere Presence" Defense, and Presenting Harmful Testimony

In this objection, Petitioner contends that the Magistrate Judge applied an incorrect or wrong standard, and focuses on the Magistrate Judge's stated conclusion that Petitioner "has not shown by clear and convincing evidence that the factual determinations of the state court were incorrect or that trial counsel's determination to call Mr. Scott as a witness rose to the level of ineffective assistance of counsel under *Strickland*." (R&R at 32). Petitioner suggests that in reaching this conclusion, the Magistrate Judge mistakenly applied the applicable standard of review for a state court's factual findings to the state court's legal findings. This Court disagrees.

A plain reading of the R&R confirms that the Magistrate Judge applied the correct AEDPA standards to Petitioner's claim of ineffective assistance of counsel when considering his trial counsel's decision to call witness David Scott. Under AEDPA, a state court's factual determinations are presumed to be correct, but can be rebutted by the petitioner with clear and convincing evidence. 28 U.S.C. §2254(e)(1). A state court's legal determinations, on the other hand, are reviewed under the unreasonable application/determination standards of §2254(d). As set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), however, "judicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To succeed, "a defendant must overcome the 'presumption that, under the

circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689).  In the R&R, the Magistrate Judge found that Petitioner had "not shown by clear and convincing evidence that the factual determinations of the state court were incorrect *or* that trial counsel's determination to call Mr. Scott as a witness rose to the level of ineffective assistance of counsel under *Strickland*."  (R&R at p. 32) (emphasis added).  This Court is satisfied that, in reaching this conclusion, the Magistrate Judge applied the appropriate standards of review to both the state court's factual and legal findings.[4]

Next, Petitioner objects to the Magistrate Judge's conclusions with respect to his ineffective assistance of counsel claims premised on trial counsel's decision to call David Scott as a witness, which Petitioner contends turned out to be harmful.  Specifically, Petitioner objects to the Magistrate Judge's finding that the state court's conclusion that trial counsel had a reasonable basis for calling Mr. Scott as a witness was reasonable and, therefore, trial counsel was not ineffective under *Strickland*.  Mr. Scott testified on trial counsel's direct examination that he recalled three people wielding guns, including two that he recognized (Curnell Bennet and "Slim"), but that he could not recognize anyone sitting in the courtroom, including Petitioner, as having been present at the scene of the shooting.  When pressed by the trial judge to clarify if "you know whether or not [the third person] was this defendant?" Mr. Scott responded, "Not for sure.  It could have been."  Petitioner contends this testimony was harmful and that his trial counsel was ineffective for calling Mr. Scott to the stand without fully and adequately investigating Mr. Scott's potential testimony.

---

[4]    Notably, in support of her conclusions in this respect, the Magistrate Judge cited to *Wheeler v. Rozum*, 410 F. App'x 453, 459 (3d Cir. 2010), wherein the Third Circuit recites the appropriate standards of review to be applied under AEDPA.

When addressing the merits of ineffective assistance of counsel claims on *habeas* review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced the defense. *Id*. at 687. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). The court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996).

The Magistrate Judge concluded (as did the state courts) that trial counsel had a reasonable basis for calling Mr. Scott to testify. At the PCRA hearing, trial counsel testified that he called Mr. Scott to testify in order to undermine the testimony of other witnesses who placed Petitioner at the scene, standing between two of the shooters. Petitioner essentially argues that trial counsel should have anticipated the possibility that Mr. Scott's testimony would "go south" for Petitioner and that counsel should have conducted a more thorough investigation of Mr. Scott's potential testimony and not have limited it, as he did, to a review of Mr. Scott's statements to police and to a single interview of Mr. Scott outside the courtroom.

As the Magistrate Judge concluded, this Court finds that the state court's conclusion that trial counsel had a reasonable basis for calling Mr. Scott is sound. Trial counsel testified that he was aware that Mr. Scott had been unable to identify Petitioner in his statement to police, and

that he had failed to make an identification of Petitioner at a pre-trial lineup.  With this knowledge, prior to calling Mr. Scott to the witness stand, trial counsel interviewed Mr. Scott outside the courtroom to confirm that he could not identify Petitioner as having been present at the scene of the shooting. As trial counsel explained, such testimony would refute that of other witnesses who placed Petitioner at the scene standing between two of the identified assailants. Given that two other witnesses had already testified that Petitioner was standing between two of the shooters, it was reasonable for trial counsel to call Mr. Scott whose testimony could call into question the testimony of the other eyewitnesses.  This Court agrees with the conclusion of the Magistrate Judge that trial counsel's decision to call Mr. Scott as a witness under these circumstances does not amount to ineffective assistance of counsel under *Strickland*.

Petitioner also objects on the basis that neither the state court nor the Magistrate Judge addressed his contention that his trial counsel could have:  (1) called the lineup detective rather than Mr. Scott to verify that Mr. Scott had not identified Petitioner at the lineup; and (2) impeached Mr. Scott with the descriptions he gave to police of the three men with guns, none of which matched Petitioner.  These arguments, however, equally fail because the state courts reasonably found that Petitioner's trial counsel had a reasonable strategic reason for calling Mr. Scott.

Petitioner also argues that his trial counsel should have investigated the possibility that Mr. Scott himself was carrying a gun on the day of the incident and requested that the jury be instructed to treat Mr. Scott's "inconclusive" testimony with caution.  The Magistrate Judge found these claims to be procedurally defaulted.  This Court agrees since the claims were never fairly presented to the state courts.  Petitioner's argument that his procedural default of these

claims can be overcome by the limited *Martinez* exception discussed above, fails for the same reasons previously discussed.  *See* discussion of *Marinez supra* at pp. 9-11.

Petitioner also objects to the Magistrate Judge's adverse findings with respect to Petitioner's ineffective assistance of counsel claim premised on his challenge to the method by which his counsel chose to impeach the testimony of Allen Carson.  In a statement given to police prior to Petitioner's trial, Mr. Carson stated that Petitioner had "leaned against [a street] pole" while the attack was taking place.  During trial, Mr. Carson testified that Petitioner was slightly closer to the events and did not mention him leaning against the pole. Trial counsel attempted to impeach Mr. Carson with his prior statement, but after a single objection was sustained, counsel abandoned the effort.  Trial counsel then called Detective Kenneth Curcio to read Mr. Carson's prior statement into evidence.  That statement, however, also included Mr. Carson's statement that Petitioner and another man "acted as lookouts."  Petitioner contends that trial counsel's decision to impeach Mr. Carson's statement through Detective Curcio rather than by impeaching Mr. Carson with his own statement while he was on the stand constitutes ineffective assistance.

As noted by the Magistrate Judge, the state courts addressed this argument and found that trial counsel had a reasonable basis for calling Detective Curcio.  Specifically, the Pennsylvania Supreme Court found:  "[g]iven the choice between testimony which placed [Petitioner] in the midst of the group of assailants or testimony that placed [Petitioner] apart but speculated that he may have been acting as a lookout, it was reasonable for counsel to opt for the second alternative."  *Speight*, 677 A.2d at 323.  This Court agrees.  Because trial counsel had a reasonable basis for calling Detective Curcio, the Pennsylvania Supreme Court's determination

was not contrary to or an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.

### Objection Five – Claim V – Ineffective Assistance of Counsel for Failing to Call a Crime Scene Expert for Ballistics Evidence

In his *habeas* petition at Claim V, Petitioner asserts that his trial counsel was ineffective for failing to call a crime scene ballistics expert.  The Magistrate Judge found this claim to be procedurally defaulted.  Petitioner objects to this finding based on his reliance on *Martinez* to overcome the procedural default.  For the reasons discussed above, and at length in the R&R, Petitioner's reliance on the narrow *Martinez* exception is misplaced.  *See* discussion of *Martinez supra* at pp. 9-11.  This claim is procedurally defaulted.

### Objection Six – Claim VI – Ineffective Assistance of Counsel for Failing to Investigate and Prepare to Meet Commonwealth's Evidence, and to Object to Inadmissible Evidence

At Claim VI of his *habeas* petition, Petitioner asserts that his trial counsel was ineffective in failing to investigate and present evidence that would have impeached the Commonwealth's witnesses, contradicted the Commonwealth's theory of the case, and exculpated Petitioner.  The Magistrate Judge found that these claims were procedurally defaulted because they were not fairly presented to the state courts.  Petitioner objects to the Magistrate Judge's conclusion essentially arguing that the claim is subject to the narrow exception set forth in *Martinez*.  The Magistrate Judge addressed and rejected this argument.  For the reasons set forth above, this Court agrees.  *See* discussion of *Martinez supra* at pp. 9-11.  Petitioner's objection, therefore, is overruled.

### Objection Seven – Claim VII – Denied Due Process by Commonwealth's False Arguments and Presentation and Suppressed Material and Exculpatory Evidence

At Claim VII of his petition, Petitioner asserts that his due process rights were violated by the prosecution's failure to turn over various *Brady* materials; specifically: that one or more

members of the victims' group had a gun at the time of the shooting; that David Scott had failed to identify Petitioner and his co-defendants; and that of the criminal activities by members of the victims' group, including their violent intimidation of passers-by on the street corner where the crime occurred.  The Magistrate Judge found this claim to be procedurally defaulted.  In his objections, Petitioner argues that he has shown the "cause and prejudice" requisite to overcome the procedural default and has met this burden by effectively substantiating his underlying *Brady* claims.

The Supreme Court has recognized that the "cause and prejudice" analysis for a procedurally defaulted claim in a *habeas* matter based on *Brady* parallels two of the three components of the underlying alleged *Brady* violation.  *See Banks v. Dretke*, 540 U.S. 668, 691 (2004).  "[I]n the specific context of a *Brady* claim, 'a petitioner shows cause when the reason for his [default] in state-court proceedings was the State's suppression of the relevant evidence." *Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013) (citations omitted).  "[P]rejudice . . . exists when the suppressed evidence is 'material' for *Brady* purposes."  *Id*. (citations omitted).  Thus, to demonstrate the "prejudice" necessary to excuse a "procedural default of a *Brady* claim, a *habeas* petitioner must show that the undisclosed evidence is material."  *Id*.

As the Magistrate Judge found, and this Court agrees, Petitioner has failed to show cause for his admitted procedural defaults.  Notably, in his original memorandum of law, Petitioner relied solely on his general arguments as to "cause" and the narrow *Martinez* exception on which he relied to overcome other procedural defaults.  (*See* Petitioner's Memorandum of Law at p. 75).  For the reasons discussed above and at length in the R&R, Petitioner's reliance misplaced. *See* discussion of *Martinez supra* at pp. 9-11.

In his objections, Petitioner baldly argues for the first time that he has met the "cause" requirement by substantiating his underlying *Brady* claims. While the "cause" requirement can be satisfied where a petitioner shows that the default was caused by the state's suppression of relevant evidence, *see Johnson*, 705 F.3d at 128, here Petitioner has made no attempt to show that the Commonwealth's purported suppression of the alleged evidence was the cause of his default. Indeed, most of the information to which Petitioner points to substantiate his allegation that the Commonwealth suppressed evidence is contained in declarations obtained from individuals who either gave statements to the police (which were provided to Petitioner before his trial), or who testified at his trial in 1993. Petitioner brought and litigated two separate PCRA petitions and failed to raise a *Brady* claim in either petition. Indeed, this federal *habeas* action was stayed to allow Petitioner to litigate his Second PCRA Petition. Petitioner offers no reason why this information could not have been obtained and presented to the state courts. Nor does he support any connection between the Commonwealth's purported failure to produce the evidence and his procedural default of the claims. Having failed to do so, Petitioner cannot overcome his procedural default. *See id.*

Even if Petitioner could overcome the procedural default of his *Brady* claims, these claims lack merit. To obtain a new trial for a *Brady* violation, Petitioner must show: (1) the evidence at issue is favorable to the accused; (2) the evidence was suppressed by the state; and (3) the evidence is material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The Third Circuit Court of Appeals summarized the "materiality" requirement of *Brady* as follows:

> The evidence is material only if there is a reasonable probability
> that, had the evidence been disclosed to the defense, the result of
> the proceeding would have been different. [A] showing of
> materiality does not require demonstration by a preponderance that
> disclosure of the suppressed evidence would have resulted
> ultimately in the defendant's acquittal . . . Rather, the touchstone of

> materiality is a reasonable probability of a different result.  The question is . . . whether in [the evidence's] absence [the petitioner] received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.  The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state.  Suppressed evidence that would be cumulative of other evidence or would be used to impeach testimony of a witness whose account is strongly corroborated is generally not considered material for *Brady* purposes.  Conversely, however, undisclosed evidence that would seriously undermine the testimony of a key witness may be considered material when it relates to an essential issue or the testimony lacks strong corroboration.

*Johnson*, 705 F.3d at 128-29 (citations and quotations omitted).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

Here, Petitioner has not shown, nor can he show, that the allegedly suppressed evidence is material, *i.e.*, a reasonable probability that the result would have been different had the suppressed evidence been disclosed.  Even accepting Petitioner's interpretation of the evidence, at best this evidence suggests the victims' group was armed and sought to protect its drug distribution territory from competitors.  It does not diminish or refute, in any way, Petitioner's presence at the time of the incident, or his conspiratorial participation in the shootings.  Moreover, it is far from a reasonable probability that this evidence would have changed the outcome in light of:  other evidence that showed that at least one member of the assailants' group went to confront the members of the victims' group carrying a submachine gun; the absence of any other evidence that any member of the victims' group was armed or brandished a weapon; the undisputed fact that every member of the victims' group (except for David Scott) was fatally or gravely wounded and no weapons were found on any of the victims; and the fact that none of

the members of the assailants' group was injured in any way.  Petitioner's objection, therefore, is overruled.

### Objection Eight – Claim VIII – Prosecutorial Misconduct and Ineffective Assistance of Counsel for Failing to Object

At Claim VIII, Petitioner asserts that the trial prosecutor committed misconduct during closing arguments and that Petitioner's counsel was ineffective for failing to object.  The Magistrate Judge found most of the aspects of this claim to be procedurally defaulted.  In his objections, Petition contends that these procedural defaults can be overcome by the narrow *Martinez* exception.  For the reasons discussed above (and by the Magistrate Judge), Petitioner is wrong.  *See* discussion of *Martinez supra* at pp. 9-11.

The Magistrate Judge found that Petitioner had presented only one claim of prosecutorial misconduct to the state court; *to wit*: that trial counsel was ineffective for failing to object when the prosecutor impermissibly stated during closing argument that the jury should convict Petitioner because the prosecutor believed Petitioner was guilty.  Addressing the merits of this exhausted claim, the Magistrate Judge found that the state court's conclusion that the prosecutor's statement during closing was not an expression of personal opinion, but rather an expression of the evidence presented at trial, was reasonable.  In his objections, Petitioner merely cites to the arguments he presented to the Magistrate Judge by way of his memorandum of law, but provides no argument as to how the Magistrate Judge's conclusion was incorrect.  Notwithstanding, this Court finds the Magistrate Judge's conclusion, and that of the Pennsylvania Supreme Court, to be sound.  This objection, therefore, is overruled.

### Objection Nine – Claim IX – Improper Jury Instruction and Ineffective Assistance

At Claim IX, Petitioner asserts that the trial court's jury instructions unconstitutionally relieved the prosecution of its burden of proving each and every one of the elements of the first

degree murder charge, and that counsel was ineffective for failing to raise and litigate this claim. In the R&R, the Magistrate Judge found that the Pennsylvania Supreme Court's rejection of this claim was not unreasonable.   In his objections, Petitioner contends that the Magistrate Judge applied the wrong standard.   Specifically, Petitioner asserts that "[i]nstead of applying the *Francis* standard regarding instructions that are themselves 'constitutionally infirm,' the court applied a standard for reviewing an 'ambiguous' instruction, i.e., 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)."  (Petitioner's Objections at 32).

Petitioner's objection with regard to the standard applied by the Magistrate Judge is without merit and premised upon Petitioner's rearrangement of snippets taken from the *Francis* decision.   Contrary to Petitioner's argument, *Francis v. Franklin*, 471 U.S. 307 (1985) does not articulate one standard to be applied to jury instructions that are found to be "constitutionally infirm," and another standard to be applied to jury instructions that are merely ambiguous. Rather, to the extent *Francis* outlined different standards or analyses, those two differing analyses pertain to whether the challenged jury instruction is deemed mandatory or permissive, an issue not raised or discussed by Petitioner.  *Id*. at 313-314.   Indeed, nowhere in any of his briefing on his original *habeas* petition does Petitioner make the argument he now makes in his objections.   To the contrary, Petitioner argued for the same "reasonable likelihood" standard applied by the Magistrate Judge that he now contends was wrong.   (*See* Petitioner's Memorandum of Law [ECF 70] at 83).

Here, both the Magistrate Judge and the Pennsylvania Supreme Court applied the proper analysis to the challenged jury instructions.   Jury instructions violate due process when they relieve the state of its obligation to prove every element of an offense beyond a reasonable doubt.

*Sandstrom v. Montana*, 442 U.S. 510, 521 (1979).  "To show that a jury instruction violates due process, a habeas petitioner must demonstrate both (1) that the instruction contained some 'ambiguity, inconsistency, or deficiency,' and (2) that there was 'a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.'"  *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (quoting *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009)).  This "two-part inquiry requires a federal habeas court to 'focus initially on the specific language challenged,' and then to review the challenged instruction in the context of the entire charge and in light of the evidence and arguments presented at trial."  *Id.* (citations omitted).  Contrary to Petitioner's argument otherwise, the state courts *and* the Magistrate Judge assessed the challenged jury instructions under this standard.  As such, Petitioner's objection is overruled.

In his objections, Petitioner takes issue with the Magistrate Judge's reliance on the Third Circuit's decision in *Bronshtein v. Horn*, 404 F.3d 700 (3d Cir. 2005), and distinguishing the holding of *Laird v. Horn*, 414 F.3d 419 (3d Cir. 2005).   Again, Petitioner's contentions are misplaced.

As described in the R&R, the Pennsylvania Supreme Court concluded that when viewing the jury instructions in this case as a whole, the jury could only convict Petitioner for conspiracy to commit murder if it found that he specifically intended to promote or facilitate the offense of murder.  *Speight*, 854 A.2d at 459-61.  When reviewing the state court's decision, the Magistrate Judge found that it was consistent with the Third Circuit's holding in *Bronshtein*, wherein the Third Circuit concluded that when a jury convicted a defendant of conspiracy to commit murder, the jury necessarily found that the defendant, and not merely one or more of his co-conspirators, had the necessary intent to kill sufficient to sustain a conviction for first-degree murder.

*Bronshtein*, 404 F.3d at 713-14.  As such, the Third Circuit therein concluded that the error in the jury instruction for first-degree murder was harmless in light of the correct instruction on conspiracy to commit first-degree murder.  *Id*.  Here, as in *Bronshtein*, the jury convicted Petitioner of conspiracy to commit murder, as well as first-degree murder.  In convicting Petitioner of conspiracy to commit murder, the jury necessarily found that Petitioner, and not merely one or more of his co-conspirators, possessed the necessary intent to kill.  As such, contrary to Petitioner's argument, the Magistrate Judge's reliance on *Bronshtein* was appropriate.

The Magistrate Judge also correctly distinguished this case from *Laird*.  In *Laird*, the inchoate liability instruction told the jurors that Laird was guilty as an accomplice if he had solicited, commended, encouraged, or requested the commission of "a crime" with the intent to promote or facilitate it.  The Third Circuit, however, determined that the instruction did not make sufficiently clear that murder had to have been the "crime" Laird intended to promote or facilitate.  414 F.3d at 422.  The *Laird* jury was also incorrectly instructed that it could convict Laird of a substantive offense even if the "particular crime . . . differ[ed] from the agreed crime," if it was committed by the co-conspirator in furtherance of his and the defendant's common plan and design.  *Id*. at 428.  In light of these unclear instructions, the Third Circuit concluded that given the jury instructions and the particular facts of that case, "the jury could easily have convicted Laird of first-degree murder based on his conspiring with Chester to kidnap or assault Milano even if jurors were not convinced beyond a reasonable doubt that Laird intended to kill him."  *Id.* at 427.  In addition, the Third Circuit noted that Laird was convicted of first-degree murder, second-degree murder, third-degree murder, and criminal conspiracy, leading the Third Circuit Court to conclude that it was unable to determine what crime the jury found Laird had intended to promote or facilitate.  *Id*. at 429.

In contrast to the jury instructions in *Laird*, the instructions in this case told the jury that Petitioner was charged with conspiracy to commit murder, for which he would have had to "agree[] with another person or persons that they or one of them would engage in conduct which constitutes the *crime of murder* or agreed to aid another person or persons in the planning or commission of the *crime of murder*" and that he did so with the intent to promote or facilitate the commission of that crime, rather than some other possible crime. (N.T. 6/24/93, at 148-49) (emphasis added). As correctly noted by the Magistrate Judge, in light of the material differences between this case and *Laird*, Petitioner's reliance on *Laird* is misplaced.

As noted, the conspiracy to commit murder charge in the present case similarly instructed that Petitioner could only be found guilty of conspiracy to commit murder if it was proven "beyond a reasonable doubt" that Petitioner acted "with the intent of promoting or facilitating the commission of that crime." While the Pennsylvania Supreme Court found the first-degree murder charge was incorrect, this Court finds that the state court's conclusion that the remainder of the charges sufficiently explained to the jury that it had to find that Petitioner intended the killing in order to find him guilty under the theory of accomplice liability and conspiracy to commit murder was reasonable. Accordingly, this objection is without merit. As such, this Court agrees with the conclusion of the Magistrate Judge that it was not unreasonable for the Pennsylvania Supreme Court to conclude that the trial court's jury instructions, when viewed as a whole, made it clear that Petitioner could be convicted for conspiracy to commit murder only if he specifically intended to promote or facilitate the offense of murder.

### Objection Ten – Claim X – Insufficient Evidence

At Claim X, Petitioner asserts that his conviction on all charges violates the due process clause because there was insufficient evidence to prove beyond a reasonable doubt that he

committed, conspired to commit, or aided or abetted those who committed the charged crimes.

In her R&R, the Magistrate Judge found that a jury could reasonably have found Petitioner was

part of a conspiracy and possessed the requisite intent to commit first-degree murder.  In his

objections, Petitioner merely "objects to the magistrate judge's conclusion," and repeats the same

arguments presented to and considered by the Magistrate Judge in her 70-page R&R.  As such,

Petitioner's inappropriate general objection, without more, is overruled.

Notwithstanding, as set forth in the R&R, the United States Supreme Court has noted that

due process claims of insufficient evidence, like Petitioner's claim here:

> face a high bar in federal habeas proceedings because they are
> subject to two layers of judicial deference.  First, on direct appeal,
> it is the responsibility of the jury – not the court – to decide what
> conclusions should be drawn from evidence admitted at trial.  A
> reviewing court may set aside the jury's verdict on the ground of
> insufficient evidence only if no rational trier of fact could have
> agreed with the jury.  And second, on habeas review, a federal
> court may not overturn a state court decision rejecting a sufficiency
> of the evidence challenge simply because the federal court
> disagrees with the state court.  The federal court instead may do so
> only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (internal citations and quotations omitted).

Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In reviewing the evidence at Petitioner's trial, the Pennsylvania Supreme Court found:

> Here, the evidence the Commonwealth presented sufficiently
> established that [Petitioner] and his co-conspirators approached
> Carson's group to remove them, once and for all, from their
> location, so that Bennet's drug business would not be hampered.
> The evidence further demonstrates that [Petitioner's] group acted
> together in firing numerous shots at Carson's group and that the
> middle person, identified by one eyewitness as [Petitioner], had
> personally fired shots at the group.  Such evidence clearly

> demonstrated that the killings were committed with malice
> aforethought sufficient to sustain [Petitioner's] convictions for first
> degree murder.

*Speight*, 677 A.2d at 321.  At the very least, Petitioner was identified at trial as a member of the group that shot and killed members of the victims' group.

As he has argued before the state courts and the Magistrate Judge, Petitioner contends this evidence was insufficient to show that he either knew that his co-conspirators possessed the weapons that they, in fact, carried, or that he knew of their intent to use them to kill.  Based on the evidence presented at trial, however, the jury reasonably could have found, as it did, that Petitioner was not a mere passive spectator but that he shared the other assailants' intent to use their weapons to kill.  As such, this Court is unable to conclude that the Pennsylvania Supreme Court's determination was unreasonable in light of the totality of evidence presented at trial.  Petitioner's sufficiency of the evidence objection, therefore, is overruled.

### Objection Eleven – Claim XI – Petitioner is Innocent of First Degree Murder

At Claim XI of his *habeas* petition, Petitioner asserts that because he is actually innocent of first degree murder, it would violate the Constitution to execute him.  (Petitioner's Mem. of Law at 107).  Because this claim as asserted pertains only to Petitioner's death sentence, and Respondents have agreed to the conditional grant of relief as to Petitioner's death sentence, the Magistrate Judge did not address this claim.  In his objections, however, Petitioner contends that this claim is still viable because it pertains to his convictions for first degree murder and conspiracy and not just his death sentence.  Petitioner is mistaken.

The United States Supreme Court has "assumed without deciding that 'in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue

open to process such a claim.'"  *House v. Bell*, 547 U.S. 518, 554 (2006) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)).  Free standing "actual innocence" claims, however, have only been deemed cognizable on federal *habeas* review when the petitioner is challenging a death sentence.  *See e.g.*, *Herrera*, 506 U.S. at 400; *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) ("It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'") (quoting *Herrera*); *Peace v. Superintendent SCI-Cresson*, 2011 WL 7112287, at *3 (E.D. Pa. Oct. 17, 2011) ("The Supreme Court has held that free-standing claims of actual innocence – *i.e.*, those not attached to an independent constitutional claim – are inappropriate for federal habeas relief."); *Woodard v. Tennis*, 2009 WL 1858237, at *10 (W.D. Pa. June 29, 2009) (noting that the "Third Circuit repeatedly has emphasized that in non-capital cases," free-standing claims of factual innocence "are never grounds for federal habeas relief absent an independent constitutional violation."); *Colon v. Ericson*, 2008 WL 5003476, at *3 (E.D. Pa. Nov. 20, 2008) (holding that free-standing claim of factual innocence "fails to present an issue cognizable on federal habeas review").  Because Respondents have agreed not to contest a grant of relief as to Petitioner's death sentence, and because Petitioner no longer faces the prospect of being executed, his claim of actual innocence is no longer cognizable on federal *habeas* review as an independent claim.  Petitioner's objection is, therefore, overruled.

### *Objection Twelve – Claim XVII – Cumulative Prejudicial Errors*

At Count XVII of his *habeas* petition, Petitioner asserts that even if he is not entitled to relief on any individual claim, he is nevertheless entitled to relief because the cumulative effect of all of the alleged errors denied him a fair trial.  In the R&R, the Magistrate Judge found that this claim was procedurally defaulted and that as with Petitioner's other procedurally defaulted

claims, he has not met his burden to overcome the default.  Notably, Petitioner acknowledged that this claim was procedurally defaulted in his original memorandum of law.  Notwithstanding, in his objections, Petitioner contends he can overcome the procedural default for the reasons previously articulated by Petitioner, but rejected above.  For the reasons discussed above, and in the Magistrate Judge's R&R, Petitioner has not met his burden to overcome his procedural defaults.  *See* discussion of *Martinez supra* at pp. 9-11.  Therefore, this objection is overruled.

**CONCLUSION**

For the reasons stated herein, Petitioner's objections to Magistrate Judge Caracappa's Report and Recommendation are overruled, the Report and Recommendation is approved and adopted.  Consequently, Petitioner's petition for a writ of *habeas corpus* as to the guilt phase of his trial is denied and dismissed.  With respect to Petitioner's sentence of death, by agreement of the parties, the petition for a writ of *habeas corpus* is granted, and Petitioner is to be re-sentenced.  Because reasonable jurists would not debate this Court's disposition of Petitioner's claims, a certificate of appealability is denied.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Finally, this Court has found no merit to Petitioner's underlying *habeas* claims, therefore, his motions for discovery and for oral argument are denied.

An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, USDC J.